UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>JMF CAB, INC.<br><br>         Debtor | Chapter 7<br>Case No. 19-11269-MSH |

**MEMORANDUM AND ORDER
ON BERKSHIRE BANK'S MOTION FOR RELIEF FROM STAY AS TO
UBER SETTLEMENT FUNDS**

    Berkshire Bank, a secured creditor of the chapter 7 debtor, JMF Cab, Inc., has moved in this case for relief from the automatic stay pursuant to Bankruptcy Code § 362(d)[1] in order to exercise its rights under its loan agreements with JMF, including enforcing its security interest in the collateral and the proceeds of that collateral securing JMF's obligations to it (ECF No. 26). One item of the bank's collateral, in former times its crown jewel, is a taxi medallion issued to JMF by the City of Boston. The bank contends that its security interest in proceeds of the medallion covers a settlement payment made by Uber Technologies, Inc. to resolve claims asserted by JMF in a suit brought in the United States District Court for the District of Massachusetts. Joseph G, Butler, the chapter 7 trustee in this case, objected to the bank's motion as to the Uber settlement proceeds, asserting that the funds are not subject to the bank's security interest. After an initial hearing held on July 16, 2019, I granted the bank relief from the automatic stay to enforce its rights in its collateral, including the taxi medallion, but deferred granting relief as to the Uber funds pending completion of the settlement process in the U.S. district court. The settlement with Uber has now been consummated.

---

[1] All references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

Having reviewed the settlement agreement and the operative complaint in the Uber litigation, as well as the loan documents pertinent to the bank's claim, and having considered the written submissions and additional oral arguments of the parties, I conclude for the reasons that follow that the bank has failed to establish that the Uber settlement funds constitute its collateral or the proceeds of its collateral, and thus it is not entitled to stay relief as to those funds.

Background

Prior to its bankruptcy on April 16, 2019, JMF owned and operated a taxicab business in in the City of Boston. It owned one City of Boston Hackney Division taxi medallion. In 2014, JMF took a loan from the bank's predecessor, Commerce Bank & Trust Company. It executed a promissory note in the principal amount of $375,000 and a security agreement granting the lender a security interest in its assets to secure its obligations under the note. The security agreement contains a section defining and identifying collateral, which includes the medallion, as well as:

> (A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.
> (B) All products and produce of any of the property described in this Collateral section.
> (C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.
> (D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.
> (E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Berkshire Bank Mot. Ex. B, ECF No. 26. The bank's security interest was perfected by the filing with the Massachusetts Secretary of State of a UCC-1 form financing statement and subsequently a UCC-3 form assignment from the bank's predecessor.

In 2016, JMF along with a number of other taxicab companies brought suit against Uber in the United States District Court for the District of Massachusetts. Their amended complaint asserted claims for: (1) unfair competition in violation of chapter 93A, section 11 of the Massachusetts General Laws; (2) common law unfair competition; (3) aiding and abetting violations of chapter 93A, section 2 of the Massachusetts General Laws and unfair competition by Uber drivers; and (4) civil conspiracy. Second Amended Complaint at 85-88, *Malden Transp., Inc. v. Uber Techs., Inc.*, No. 1:16-cv-12538-NMG (D. Mass. Mar. 27, 2018), ECF No. 113.

JMF filed its voluntary chapter 7 petition in this Court on April 16, 2019. The bank has asserted a secured claim in this case in the amount of $349,077.52 secured by, among other assets, the "medallion and proceeds therefrom, including proceeds from debtor's lawsuit against UBER." Claim No. 2-1. The parties agree that as a result of the collapse in value of Boston taxi medallions in the wake of the rideshare revolution, the value of JMF's medallion is significantly less than the amount of the bank's claim. They further agree that the bank's claim would be under-secured even if all the Uber settlement money were paid to the bank as collateral proceeds securing its claim.

In 2019 (after JMF's bankruptcy), Uber agreed to settle the litigation with JMF and many of the other taxi owners. While a global settlement was reached between Uber and these owners, separate written settlement agreements were entered into with bankrupt owners (or their

trustees), presumably to facilitate obtaining bankruptcy court approval of such settlements and possibly also to keep the terms of the global settlement out of the public eye. The settlement agreement between Uber and Mr. Butler, as trustee of the JMF bankruptcy estate, provided for a payment of $70,866.36 to the trustee in exchange for the release of all claims against Uber and its affiliates. After deducting the fees and costs of litigation counsel, the net settlement payment totaled $44,334.01, which the trustee is holding pending my ruling on the bank's stay relief motion.

The Dispute

Mr. Butler argues that the bank does not hold a security interest in the settlement funds and, therefore, they are unencumbered assets in JMF's bankruptcy estate. He argues that the claims asserted in the Uber litigation are "commercial tort claims" under Article 9 of the Uniform Commercial Code, as codified in chapter 106 of the Massachusetts General Laws, and that pursuant to section 9-108(e)(1) of that chapter, commercial tort claims must be identified with specificity in a security agreement in order to be considered subject to the agreement. The trustee notes that the bank's security agreement does not identify commercial tort claims, including such claims against Uber, in its description of collateral, which, according to the trustee, establishes that the settlement funds are not subject to the security agreement. The trustee further notes that, under section 9-204(b)(2), a security agreement is not effective with respect to a commercial tort claim acquired after the agreement was executed. Finally, Mr. Butler maintains that the Uber settlement payment is not sufficiently linked to a loss in value of the taxi medallion so as to constitute "proceeds" of the medallion and thus qualify as replacement collateral pursuant to section 9-102(a)(64)(D).

The bank asserts that the security agreement establishes a lien not only on the medallion but also on any proceeds, products, and records of the medallion. It argues that because JMF's complaint in the Uber litigation claimed damages for loss in value of the medallion, the settlement payment constitutes proceeds of the medallion to which the bank's lien attaches as replacement collateral. According to the bank, since its lien attaches to the settlement funds as proceeds of its collateral, the funds are not property of the bankruptcy estate and upon granting it stay relief the funds must be turned over to the bank. The bank argues that the claims against Uber were "business tort claims" which are not subject to the same narrow restrictions reserved for commercial tort claims in Article 9. The bank did not provide any legal authority to support its creative distinction between business and commercial tort claims, nor does any appear to exist.

Analysis

Pursuant to Bankruptcy Code § 362(g)(1), a party moving for relief from the automatic stay bears the burden of proof as to the debtor's equity in the property at issue. The absence of equity is one of the bases for the court's granting a motion for stay relief. 11 U.S.C. § 362(d)(2). If the Uber settlement payment is not subject to the bank's security interest, then it would be an unencumbered asset of the bankruptcy estate. That is to say, there would be equity in that asset. Since the presence or absence of equity in the Uber settlement funds depends on whether they are encumbered by the bank's security interest, in the context of its stay relief motion the bank bears the burden to prove that the funds constitute its collateral.

Notwithstanding the bank's unsupported argument to the contrary, the claims asserted in the Uber litigation are commercial tort claims. Under Article 9, a commercial tort claim is "a

5

claim arising in tort with respect to which . . . the claimant is an organization." Mass. Gen. Laws ch. 106, § 9-102(13)(A). It is undisputed that JMF is an organization as that term is used in Article 9 and that the Uber litigation claims sound in tort. *See Bridgwood v. A.J. Wood Constr., Inc.*, 480 Mass. 349, 355 (2018) ("In determining whether a given case is an action in tort . . . , we 'look to the gist of the action.' A key difference between an action in tort and an action in contract is that in the latter, 'the standard of performance is set by the defendants' promises, rather than imposed by law.'") (citation omitted) (quoting *Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 822-23 (1986)). That is, there are no allegations that JMF or any of the other plaintiffs in the Uber litigation contracted with Uber; rather, the claims are based on Uber's alleged violation of statutory, regulatory, and common law. Accordingly, the claims asserted in the Uber litigation are commercial tort claims.

Because the bank's security agreement did not include commercial tort claims as collateral, the settlement funds can only be subject to the bank's security interest if they constitute proceeds of the bank's actual collateral, here the taxi medallion. *See* Mass. Gen. Laws ch. 106, §§ 9-108(e)(1), 9-102(a)(64)(D), 9-204(b)(2). Proceeds of a commercial tort claim arising out of damage to a creditor's collateral are subject to the creditor's security interest. *See In re American Cartage, Inc.*, 656 F.3d 82, 89 (1st Cir. 2011) ("Viewed as a whole, Article 9 teaches that when a party has an interest in a commercial tort claim *as proceeds*, what the secured party has is a right to the recovery, not a right to the claim itself. An action for conversion is not proceeds; only the *end product* of that action—the settlement amount or award—constitutes proceeds." (first emphasis added)). Proceeds of collateral include the money obtained from selling it and the money obtained in compensation for a diminution in its value.

6

*See* Mass. Gen. Laws ch. 106, § 9-102(64)[2]; *In re American Cartage*, 656 F.3d at 89 (quoting *Helms v. Certified Packaging Corp.*, 551 F.3d 675, 678 (7th Cir. 2008)).

To the extent the bank can establish that the settlement funds are compensation for damage to the medallion, they would be proceeds of the bank's collateral and accordingly would be subject to its security interest. The bank has failed to make any such showing. It is true that the complaint in the Uber litigation claims damages for lost revenue, reduction in value of each of the plaintiff's businesses, and loss of value of the plaintiffs' taxi medallions. Second Amended Complaint at ¶¶ 588, 591, *Malden Transp., Inc. v. Uber Techs., Inc.*, No. 1:16-cv-12538-NMG (D. Mass. Mar. 27, 2018), ECF No. 113. But nothing in the complaint apportions the alleged damages among the asserted theories of harm or causes of action. Likewise, the settlement agreement between Uber and Mr. Butler is devoid of any apportionment of the settlement amount among the theories of harm or causes of action asserted in the complaint, nor does it offer any methodology for me to make such an apportionment. In fact, the settlement agreement does not even mention the medallion, let alone refer to any damage to it. For the bank to establish that the settlement funds constitute proceeds of its collateral paid in compensation for

---

[2] As applicable here, "proceeds" includes the following property:
  (A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;
  (B) whatever is collected on, or distributed on account of, collateral;
  (C) rights arising out of collateral;
  (D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or
  (E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

*See* Mass. Gen. Laws ch. 106, § 9-102(64).

7

harm to the medallion, where the complaint and settlement agreement provide no means for doing so, the bank needed to provide a convincing basis upon which a fact finder could determine what portion, if any, of the settlement funds were on account of harm to the medallion. The bank has failed to provide any such basis. Having failed to establish that its security interest extends to the Uber settlement funds, the bank has not carried its burden of proof on the issue of JMF's or the bankruptcy estate's lack of equity in those funds. Thus, the motion for relief from the automatic stay is denied as to the Uber settlement funds.

It is so ordered.

At Boston, Massachusetts this 14th day of April, 2020.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Michael H. Theodore, Cohn & Dussi, LLC
Boston, MA
for Berkshire Bank

Joseph G. Butler, Law Office of Joseph G. Butler
Westwood, MA
for Joseph G. Butler as Chapter 7 Trustee of the Estate of JMF Cab, Inc.